UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>ALERE, INC.,<br><br>　　　　　　　　　　Respondent. | Case No.: 18-CV-291-BEN-WVG<br><br>**ORDER DENYING PETITIONER'S MOTION TO COMPEL AND MOTION FOR CONTEMPT**<br><br>**[ECF No. 1]** |

## I. <u>INTRODUCTION</u>

On February 8, 2018, Petitioner BNSF Railway Company filed a Motion seeking compelled compliance with an out of district subpoena and the initiation of contempt proceedings against Respondent Alere, Inc.[1] (Mot., ECF No. 1.) The matter is fully briefed and the Court held a hearing on April 24, 2018. For the reasons that follow, the Court **DENIES** Petitioner's Motion.

## II. <u>BACKGROUND</u>

The subpoena subject to the present dispute is related to an underlying personal injury action pending in the United States District Court for the Western District of

---

[1] It is important to note at the outset that Alere, Inc. and Alere San Diego, Inc. were, at the time of the subpoena issuing, separate entities. Alere San Diego, Inc. was a wholly owned subsidiary of Alere, Inc. When identifying "Respondent" throughout this order, the Court is referring to Alere, Inc.

Oklahoma. *See Ezell v. BNSF Railway Co.*, Case No. 15-CV-968-M. In the underlying litigation, George M. Ezell is seeking damages for an alleged workplace injury pursuant to the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq*. (Mot. at ¶ 1.) During the course of discovery in the underlying action, it became apparent to Petitioner that information from Respondent was necessary. (*Id*. at ¶ 4.) On August 10, 2017, counsel for Petitioner, Mr. George Mullican, sent an email to Respondent that requested the parties discuss the underlying matter. (Mullican Decl., ECF No. 1-2, Ex. 1.) On August 15, 2017, Todd Chiaramida, in-house counsel for Respondent, confirmed receipt of Mr. Mullican's email and attempted to set a meet and confer time. (Chiaramida Decl. Ex. 1, ECF No. 8-9.)

On or about August 18, 2017, Mr. Mullican and Mr. Chiaramida telephonically met and conferred regarding the information Petitioner was seeking from Respondent. (*Id*. at ¶ 5.) During that call, Mr. Chiaramida informed Petitioner that Respondent "would require a subpoena" in order to provide the requested information. (*Id*.) Mr. Chiaramida further informed Petitioner that "employees with the most knowledge regarding [the subject products] were located in San Diego[.]" (*Id*.) On August 21, 2017, Petitioner served, on Respondent a subpoena to testify at a deposition. (Mullican Decl. Ex. 2.) The subpoena also required the production of all documents that would support any testimony provided at the deposition. (*Id*.) Service was completed via certified mail and a witness fee was not included. (Mot. at 11 n.1.) The subpoena was served on Respondent in Massachusetts and set the deposition to take place in San Diego, California on September 6, 2017. (*Id*. Ex. 2.)

On or about August 30, 2017, Mr. Chiaramida forwarded the subpoena to Ms. Nadia Bermudez, outside counsel for Respondent located in San Diego, California. (Chiaramida Decl. at ¶ 7.) On August 31, 2017, Respondent served on Petitioner written objections to the subpoena. (Mullican Decl. at ¶ 8.) Two of the objections are particularly noteworthy for the present motion. The first two objections stated:

> A. Nonparty objects as it is the improper entity served for the information and appearance sought by way of the Subpoena.

### B. Nonparty objects as service of the Subpoena was defective for failure to comply with Rule 45(a)(4), (b)(1).

(Mullican Decl. Ex. 3.)

On September 11, 2017, Mr. Mullican sent an email to Ms. Bermudez requesting a meet and confer regarding Respondent's objections. (*Id.* Ex. 4.) On or about September 15, 2017, Mr. Mullican and Ms. Bermudez conferred telephonically regarding the subpoena and the documents sought by Petitioner. (Bermudez Decl., ECF No. 8-1 at ¶ 6; Mullican Decl. Ex. 4.) During this meeting, Ms. Bermudez inquired about a protective order "to provide the appropriate measure of confidentiality" for her client. (*Id.* at 3:10-13.) Ms. Bermudez also suggested Respondent provide a declaration in lieu of a deposition. (*Id.* at 3:13-15.) A technical bulletin regarding the subject products was sent to counsel for Petitioner after the conclusion of the meet and confer teleconference. (Bermudez Decl. at ¶ 5; Mullican Decl., Ex. 4 at 74.)

On or about October 3, 2017, Alere, Inc. was acquired by Abbot Laboratories.[2] (Bermudez Decl. at ¶ 10.) Additionally, Alere San Diego, Inc. was divested to another company, Quidel Corporation. (*Id.*) Ms. Bermudez did not convey this information to Petitioner before the corporate transactions occurred or at this time.

On October 13, 2017, counsel for Petitioner emailed Ms. Bermudez in another attempt to informally resolve the issue of the subpoena. (Mullican Decl., Ex. 4 at 66.) In this email, co-counsel for Petitioner, Mr. Matthew Covert, indicated Petitioner would consider a declaration in lieu of a deposition if the declaration provided sufficient information. (*Id.*) Ms. Bermudez did not respond to this email. On November 13, 2017, counsel for Petitioner again emailed Ms. Bermudez in an attempt to resolve the issue of the

---

[2] In its opposition, Respondent requested the Court take judicial notice of several documents concerning the acquisition of Alere, Inc. by Abbot Laboratories and the divestiture of Alere San Diego to Quidel Corporation. (*See* ECF No. 8-11.) Petitioner did not oppose this request. The Court GRANTS this request and takes judicial notice of all documents provided as Exhibits A through I of Respondent's request. *Reyn's Pasta Bella, LLC v. Vista USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

subpoena informally. (*Id*. at 77.) Ms. Bermudez responded the same day, indicating she would reach out to Respondent and reply by Wednesday, November 15, 2017. (Bermudez Decl. Ex. 4 at 2.) On November 15, 2017, Ms. Bermudez responded that she had sent a technical bulletin to Mr. Mullican on September 15, 2017. (Bermudez Decl., Ex. 4 at 4.) In another email exchange on November 17, 2017, Ms. Bermudez appeared to convey that Respondent would provide a declaration as Ms. Bermudez claimed to be attempting to find "a proper declarant." (Mullican Decl., Ex. 4 at 76.) By this time, Ms. Bermudez still had not notified counsel for Petitioner that Respondent had been acquired by another company or that Alere San Diego, Inc. was divested to Quidel Corporation. Again, on November 22, 2017, Mr. Covert emailed Ms. Bermudez requesting an update as to when the requested and apparently agreed upon information would be provided to Petitioner. (Mullican Decl., Ex. 4 at 79.) Yet again, Ms. Bermudez did not notify counsel for Petitioner of the corporate transactions.

On January 25, 2018, Mr. Alex Farzan, local counsel for Petitioner, emailed Ms. Bermudez regarding the subpoena. (Bermudez Decl. at ¶ 12.) Ms. Bermudez was "surprised to receive this email" because she believed Petitioner's interest "may have waned" or the underlying matter settled, having not heard from Petitioner for nearly two months. (*Id*. at ¶¶ 11-12.) On January 30, 2018, counsel for Petitioner and Respondent convened a telephonic meet and confer where it was finally revealed that Alere, Inc. no longer "had the legal authority to produce" information responsive to the subpoena because Alere San Diego, Inc. had been divested. (OSC Trans., ECF No. 12 at 67:4-5.)

On February 8, 2018, Petitioner filed the present motion requesting the Court order compliance with the subpoena and issue an order to show cause why Respondent should not be found in contempt of court. On March 20, 2018, the Court convened a telephonic status conference. Appearing on behalf of Petitioner was Matthew Covert and Alex Farzan. Appearing on behalf of Respondent was Ms. Bermudez. On March 22, 2018, after finding Petitioner made a *prima facia* showing that Respondent violated an order of the court, an Order to Show Cause ("OSC") issued. (See ECF No. 6.) On April 24, 2018, the Court

convened a hearing regarding the OSC. Neither party called witnesses at the hearing.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 45(g) a district court "where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Fed. R. Civ. P. 45(g). A contempt charge against a nonparty may be either of a criminal or a civil nature. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983). "The primary purpose of criminal contempt is to punish past defiance of a court's judicial authority, thereby vindicating the court. *Id*. (citing *Shillitani v. United States*, 384 U.S. 364, 369 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)); *see also Gompers v. Bucks*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). It may include fines payable to the court and it also may include jail time. *See, e.g.*, *Shillitani*, 384 U.S. at 368.

"A court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce [a party] into compliance with the court's order; and (2) to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quotations omitted). Coercive civil contempt is "intended to deter, [and] generally take[s] the form of conditional fines." *Id*. "[C]ivil compensatory sanctions are remedial" and "typically take the form of unconditional monetary sanctions […]." *Id*.

"In a civil contempt action, the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply."[3] *FTC v. Enforma Natural Products, Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004); *see also Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). In considering the contemnor's reasons why compliance was not possible, the court may consider a history of

---

[3] A properly issued subpoena is itself a court order. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983).

noncompliance and a failure to comply despite the pendency of a contempt motion. *See Stone*, 968 F.2d at 856–57. If a contemnor has "performed all reasonable steps within [his] power to insure compliance with the court's orders" he should not be held in contempt. *Id.* at 856. However, "[i]ntent is irrelevant to a finding of civil contempt" and thus "good faith is not a defense." *Id*.

A subpoena served pursuant to Rule 45 shall "command each person to whom it is directed to … attend and testify" at a deposition. Fed. R. Civ. P. 45(a)(1)(A)(iii). A subpoena also must the state the court from which it issued, the title of the action and its civil number, and set out the text of Rule 45(d) and (e). Fed. R. Civ. P. 45(a)(1)(A)(i), (ii), and (iv). Serving a deposition subpoena also requires "delivering a copy to the named person and … tendering the fees for 1 day's attendance and mileage allowed by law." Fed. R. Civ. P. 45(b)(1).

## IV. <u>DISCUSSION</u>

It is undisputed that the subject subpoena properly stated the court from which it issued, contained the title of the action and case number, and set out the text of Rule 45 (d) and (e). Respondent argues the subpoena was not properly served, did not include the proper witness fee, and thus it was not required to comply with the subpoena. Further, Respondent argues the written objections served on Petitioner excused it from appearing at the deposition and as such should not be held in contempt. The Court will discuss each argument in turn.

**A. Motion For Contempt**

**1. Service Via Mail**

Respondent argues that service pursuant to Rule 45 requires "personal delivery." (Respondent's Opp'n, ECF No. 8 at 7:10-12.) Respondent cited five cases, including three district court opinions (including one authored by this Court) and two circuit court

opinions; none of which are binding precedent.[4]

Petitioner argues that because Respondent agreed to waive personal service, service via mail was appropriate. However, Petitioner has failed to demonstrate that such an agreement existed. According to Petitioner, Mr. Chiaramida "agreed to accept service" of the subpoena and "set the deposition at [Respondent's] facility in San Diego." (Mullican Decl. at ¶ 5.) Mr. Chiaramida claims he "did not agree to accept service by mail[.]"[5] (Chiaramida Decl. at ¶ 6.) In the face of competing declarations, the Court cannot find, without something more, that an agreement to accept service via mail existed.

In the alternative, Petitioner argues that service via mail is an appropriate means to serve a subpoena pursuant to Rule 45. Petitioner argues that service via mail is a practice that has been approved in Massachusetts, where the subpoena was served, citing *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 13-2419-FDS, 2013 WL 6058483, *4-5 (D. Mass. 2013) (finding service via Federal Express or certified mail appropriate because it was "effectuated by a means reasonably calculated to complete delivery and the respondents received the actual notice of the subpoena").

The type of service required for a Rule 45 subpoena is unsettled within this Circuit. In two unpublished opinions, the United States Court of Appeals for the Ninth Circuit has held that district courts did not abuse their discretion when quashing subpoenas where the

---

[4] Respondents cited the following cases in support of its argument: *Poly-Med, Inc. v. Novus Scientific PTE Ltd.*, 2017 WL 2291942, *2 (S.D. Cal. 2017); *Morgutia-Johnson v. City of Fresno*, 2015 WL 1021123, *1 (E.D. Cal. 2015); *In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003); and *Bailey v. Leonhardt*, 481 Fed. Appx. 381, 382 (9th Cir. 2012). (Resp's Opp'n at 7:8-19.)

[5] Respondent argued in its brief, (Resp's Opp'n at 12:10-11,) and at oral argument, (OSC Trans. at 38:3-39:13; 95:8-96:10,) that before a subpoena is served on a nonparty, commonly understood professional courtesy dictates that counsel first discuss the matter and often reach some sort of agreement before accepting service of a subpoena. Apparently, Mr. Chiaramida made no such agreement to accept service, let alone mail service, on behalf of Respondent and was upset by Mr. Mullican's failure to conform to professionally accepted standards. In tit-for-tat fashion, as discussed below, Mr. Chiaramida returned the favor by failing to notify Mr. Mullican that it was Alere San Diego, Inc., and not Respondent, that was the appropriate nonparty to be served with the subpoena. Professional courtesy swings both ways and it appears that Respondent was equally as guilty as Petitioner, if not more so. While many things remain unclear in the present matter, what is absolutely clear is that Mr. Chiaramida never informed Mr. Mullican that Respondent was the improper entity to be served during their initial meetings.

subpoenaing party did not complete personal service. *See*: *Bailey v. Leonhardt*, 481 Fed. Appx. 381, 382 (9th Cir. 2012); *Chima v. United States Department of Defense*, 23 Fed. Appx. 721, 724 (9th Cir. 2001). Finding a court did not abuse its discretion in granting a motion to quash is far from declaring that personal service is the mandatory form of service dictated by Rule 45 to the exclusion of all others.[6] Given this, the Court declines to interpret these opinions as so holding.

Rather, the Court finds the analysis and conclusion set forth in *Bland v. Fairfax County, Va.*, 275 F.R.D. 466 (E.D. VA 2011) to be highly persuasive and adopts the findings of the *Bland* court that Rule 45 does not require personal service.[7] In *Bland*, the subpoenaed nonparties were all served via either Federal Express or certified mail. *Id*. at 468. Prior to being served, the subpoenaed nonparties were aware of the incoming subpoenas and had agreed to testify. *Id*. The *Bland* court explained that the "language of Rule 45(b) neither strictly requires personal service nor prohibits alternative means of service." *Id*. at 469. After determining the operative term of Rule 45 to be "delivering," the court examined the plain meaning of "delivering" and, keeping in mind the tenets proscribed by Rule 1, found that serving a subpoena pursuant to Rule 45 included service via FedEx or certified mail. *Id*. The *Bland* court concluded that in cases where the subpoenaed nonparty was aware of the incoming subpoena and was willing to testify, actually received the subpoena in advance of the date by which testimony was required, and "the non-personal service was effected by means reasonably sure to complete delivery"

---

[6] Similarly, the Fifth Circuit's single sentence pronouncement that Rule 45 requires personal service in *In re Dennis* is not binding and provides little in the way of persuasiveness. *See In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003) ("The conjunctive form of the rule indicates that proper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance.").

[7] In *Poly-Med, Inc. v. Novus Scientific PTE Ltd.*, this Court noted that serving a subpoena is "often interpreted to mean personal service." *Poly-Med, Inc. v. Novus Scientific PTE Ltd.*, 2017 WL 2291942, *2 (S.D. Cal. 2017). The Court believes this still to be the case. However, the Court joins the growing minority that finds the "purpose of Rule 45(b) is to mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service." *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005).

that to "categorically bar[] sending those subpoenas via FedEx and certified mail would" violate Rule 1. *Id.* at 471-72.

The matter presently before the Court is sufficiently analogous to the situation presented in *Bland* to find service via mail to be appropriate and within the scope of Rule 45. First, in-house counsel for Respondent was not only aware of the subpoena but informed Petitioner that a subpoena would be *required* in order to produce the requested information. Second, the subpoena was actually received by Respondent fourteen days prior to the date on which the deposition was set to occur. Lastly, service via mail to in-house counsel for Respondent was a method of service reasonably sure to complete delivery of the subpoena.

Accordingly, the Court finds service of the subpoena to have been properly effectuated when it was served via certified mail.

### 2. Tendering Of A Witness Fee

It is well settled that a witness fee must be tendered concurrently with the service of a subpoena. *See Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989) ("Fees must be tendered concurrently with the subpoena.") (citing *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983) (the plain meaning of Rule 45(b) "requires simultaneous tendering of witness fees")).

It is undisputed that a witness fee was not tendered at the time Respondent was served. Thus, unless Respondent waived the requisite tendering of a witness fee or failed to properly object to the absence of such a fee, service of the subpoena was defective.

### 3. Geographic Limit For Subpoena

Pursuant to Rule 45(c), a "subpoena may command a person to attend a … deposition … within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1). "On timely motion," a court must quash or modify a subpoena that requires a person to comply beyond the 100 mile geographic limit. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii).

Here, Respondent did not file a timely motion to quash or modify the subpoena.

Accordingly, Respondent has waived the right to object unless the matter at hand presents unusual circumstances, as discussed further below.

### 4. Written Objections

On August 31, 2017, Respondent served on Petitioner written objections to the subpoena to testify at a deposition and document demand. (Mullican Decl. Ex. 3.) Respondent argues that its service of timely written objections excused its obligation to comply with the subpoena until a court had ruled on the objections. (Opp'n. at 9:4-16.)

In support of its argument, Respondent cites *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (finding that once a nonparty objects to a subpoena *duces tecum*, the nonparty is no longer "obligated to produce the subpoenaed documents") and *Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012) (finding the same). However, these cases are distinguishable for a single, critical reason from the present matter: both involve a subpoena *duces tecum* and not a subpoena to testify at a deposition. An analysis of Rule 45 will shed greater light on the importance of this distinction.

"The starting point for [the] interpretation of a statute is always its language." *Matter of Transwest Resort Properties, Inc.*, 881 F.3d 724, 727 (9th Cir. 2018) (internal quotation omitted). A court "must consider the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id*. A court will "look to other interpretive tools, including legislative history, in order to determine the statute's meaning" only when the statutory text is ambiguous. *Id*.

Rule 45 provides, in relevant part:

> A person *commanded to produce documents or tangible things* or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested.
>
> (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or

10

> inspection.
>
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Rule 45(d)(2)(B) (emphasis added). Respondent's argument is not supported by the language of the Rule. This subsection of Rule 45 (titled "Objections") unambiguously provides relief from complying with a subpoena after serving objections only for the production of documents and does not excuse one from testifying at a deposition.

The broader context of Rule 45 further undermines Respondent's position. The subsection immediately following the above-discussed section of Rule 45 is titled "Quashing or Modifying a Subpoena." *See* Rule 45(d)(3)(A)(ii). This subsection provides for the only other relief available to a nonparty after having been served with a subpoena. Notably absent from this subsection is any limitation to a particular type of subpoena, indicating this is the appropriate mode of relief for a nonparty served with a subpoena to testify at a deposition. Moreover, if a party were simply able to serve objections to any subpoena and avoid compliance, there would be no need for a nonparty to quash or modify a subpoena. A nonparty could simply lodge an objection to any subpoena and wait for the subpoenaing party to file a motion to compel compliance. A reading of Rule 45 as Respondent suggests would render Rule 45(d)(3) superfluous, a conclusion that cannot be supported. *See Biliski v. Kappos*, 561 U.S. 593, 607-08, 130 S. Ct. 3218, 177 L.Ed.2.d 792 (2010).

At oral argument, Respondent directed the Court to the title of Rule 45(d): "Protecting a Person Subject to a Subpoena." (OSC Trans. at 45:16-19.) Respondent argued that it is the Court's role to protect the subpoenaed nonparty when enforcing subpoenas. Respondent's argument is well taken, and the Court agrees that it is bound to protect nonparties as mandated by the Rules. However, the nonparty must seek out the Court's protection. As discussed above, the only relief available to a nonparty when served with a

subpoena to testify at a deposition is to file a motion to quash or modify the subpoena. A party cannot sit idly by and hope for the Court to step in and protect it, particularly in cases such as this where the Court is completely unaware of the nonparty's objections. When a nonparty wishes protection by the Court, the nonparty must seek out such protection, and the proper method to seek the Court's assistance after being served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena. Accordingly, the Court finds that the only way for a nonparty to seek excusal from a subpoenaed deposition is to file a motion seeking to quash or modify the subpoena.

This conclusion is consistent with those of other courts faced with similar situations. *See Aetna Casualty and Surety Co. v. Rodco Autobody*, 130 F.R.D. 2 (D. Mass. 1990) (Nonparties subpoenaed to testify and produce documents pursuant to Rule 45 served written objections on the subpoenaing party and subsequently failed to attend their depositions. The court found that "the fact that objections were served is *no excuse whatsoever* not to attend the deposition." (emphasis in original)); *Abbot v. Kidder, Peabody & Co.*, 1997 WL 337228, *3 (E.D. Ill. 1997) (finding that written objections to service of subpoena did not excuse nonparty from attending deposition absent a motion to quash or a protective order).

Accordingly, Respondent's written objections did not excuse it from testifying at the deposition.

**5. Waiver Of Objections**

Petitioner argues that by failing to file a motion to quash or modify the subpoena, Respondent has waived the right to lodge any objections or move to quash the subpoena.

A nonparty that fails to timely and properly object to a subpoena generally waives any objection it may have had. *See: CresCom Bank v. Terry*, 269 F.Supp.3d 708, 711 (D.S.C. 2017); *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); *Baker v. Ensign*, No. 11-CV-2060, 2014 WL 3058323, *6 (S.D. Cal. 2014). However, "in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." *Yousuf v. Samantar*, 451 F.3d 248,

252 (D.C. Cir. 2006); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). Unusual circumstances have been found where:

> (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a nonparty acting in good faith; and (3) [subpoenaed party] and counsel for subpoenaing party were in contact concerning the [subpoenaed party's] compliance prior to the time the [subpoenaed party] challenged legal basis for the subpoena.

*Alexander v. F.B.I.*, 186 F.R.D. 21, 34 (D.D.C. 1998). A court need only find one of these circumstances exists in order to consider untimely objections. *In re Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 124 (D.D.C. 2013) (finding that contact between the parties regarding the subpoena by itself to be sufficient to consider untimely objections).

Since Respondent has not properly objected to the subpoena, Respondent's present objections may be considered only if it is found this is an unusual circumstance.[8] The Court finds the exception for untimely objections to be inapplicable here.

First, the subpoena is not overbroad on its face and Respondent has not argued to the contrary. The topics noticed, and the related documents that were requested, are narrowly tailored and do not appear to be burdensome or oppressive.

Ms. Bermudez claims that "[a]t all times, it was [her] intention to act in good faith." (Bermudez Decl. at ¶ 15.) The Court disagrees. Respondent and Ms. Bermudez did not act in good faith. At the very first meet and confer between Mr. Chiaramida and Mr. Mullican in August of 2017, Respondent could have very quickly disposed of many of the issues the parties and the Court are presently handling by simply notifying Petitioner, through Mr. Mullican, that Alere, Inc. was a separate entity from Alere San Diego, Inc. and the subpoena should be directed to the appropriate nonparty – Alere San Diego, Inc. Clearly

---

[8] The Court certainly finds this to be an unusual circumstance. However, that is only because of the comedy of errors, missteps, and lack of diligence by both parties in the present matter.

that professional courtesy and good faith effort was not extended in this case.[9] Thereafter, Respondent, through its outside counsel, Ms. Bermudez, failed to notify Petitioner that Alere, Inc. no longer "had the legal authority to produce" information responsive to the subpoena because Alere San Diego, Inc. had been divested. (OSC Trans., ECF No. 12 at 67:4-5.) Rather, Ms. Bermudez, from October through February, continued to string counsel for Petitioner along, indicating she was working on producing the documents and attempting to find a proper declarant in lieu of a deposition.[10] All the while Ms. Bermudez knew that Alere, Inc. could not provide the requested information. Ms. Bermudez even conceded she knew "that the acquisition was going to take place" prior to the transaction occurring. (Stat Conf. Trans., ECF No. 11 at 16:18-24.) Yet no mention of this was made to Petitioner for months, at a time when Petitioner could have taken the necessary and appropriate actions to serve Alere San Diego, Inc. with a subpoena to testify at a deposition before the divestiture to Quidel Corporation. Such an omission approaches deception. In sum, from start to finish, Respondent did not act in good faith.

Lastly, while counsel for Petitioner and Respondent were in contact concerning compliance, Respondent never properly challenged the legal basis for the subpoena.

Since Respondent did not properly move to quash or modify the subpoena and the special circumstances doctrine does not apply, the Court finds that Respondent has waived any and all objections it has to the subpoena to testify at a deposition. This includes any objection to service, which necessarily includes waiving any objection to Petitioner's failure to tender a witness fee.

---

[9] Indeed, it appears Mr. Chiaramida may have exacerbated the problem by telling Mr. Mullican the "employees with the most knowledge … were located in San Diego" as opposed to alerting Mr. Mullican that these "employees" were that of another company. (Chiaramida Decl. at 3:1-3.)

[10] Actions such as this and statements indicating Respondent is no longer legally authorized to produce the requested information only added to the confusion surrounding whether Respondent was the proper entity to be served. These actions and statements, made both before and after the date of the corporate restructuring, strongly imply that at one point Respondent did have the legal authority to provide the subpoenaed information. All the while, Respondent has argued that it was never the proper nonparty from which the information should be sought.

**6. Adequate Excuse**

At the end of the day, it is Petitioner's burden to show that Respondent failed to comply with a properly issued and served subpoena "without adequate excuse." Fed. R. Civ. P. 45(g). Petitioner has not met that burden. Petitioner has shown that Respondent was properly served with a valid subpoena to testify at a deposition and that Respondent failed to comply. However, the Court finds that Respondent has an adequate excuse for failing to attend the deposition.

First, had Petitioner read carefully its own attachments to the subpoena, namely the product information guide that clearly states "Alere San Diego, Inc.," it would have learned the proper entity to serve was Alere San Diego, Inc. (*See* Mullican Decl., Ex 2 at 27.) At a minimum, such attention to detail should have triggered an inquiry during the parties' first telephonic meet and confer. Moreover, notwithstanding the fact that Respondent's objections were improper, had Petitioner taken notice of the first objection indicating the wrong entity had been served, a reasonable inquiry could have been made and an adjustment made very early on in this process. Had Petitioner properly served Alere San Diego, Inc. in the first instance, it is very likely this dispute would not have occurred.

Second, Petitioner waited until five days *after* the deposition was scheduled before addressing the written objections raised by Respondent, which Petitioner received *six* days before the scheduled deposition, on August 31, 2017. After apparently coming to an agreement regarding the production of documents and a declaration in lieu of a deposition, Petitioner again waited twenty-eight days, from September 15, 2017 to October 13, 2017, before reaching out to Respondent to inquire about the status of the documents. At this point, such a delay would have rendered the dispute untimely, if the original matter was before this court. (*See* Judge Gallo's Chambers Rules, IV.B.) Then, once again, Petitioner waited another full month, from October 13, 2017 to November 13, 2017, before following-up with Respondent. Lastly, and possibly most egregiously, Petitioner waited over two full months, from November 22, 2017 to January 25, 2018, before again addressing the issue of the subpoena with Respondent. In total, Petitioner delayed filing the present motion for

over five months from the time Respondent failed to sit for the deposition. This left Respondent with the justifiable impression that Petitioner's "interest may have waned" or "that the Oklahoma case had settled." (Bermudez Decl. at ¶ 11.) Petitioner was obligated to move with alacrity once it became aware of Respondent's objections and failure to appear at the deposition, notwithstanding Respondent's failure to file a motion to quash or modify the subpoena.[11]

While Respondent should have appeared at the deposition and produced the information in a timely matter, the Court finds the large gaps of time, particularly the time from November, 2017 to January, 2018, to be significant enough to indicate to Respondent that Petitioner may have either been satisfied with the response or was no longer pursuing the deposition. Thus, Respondent had an adequate excuse for failing to comply with the subpoena.

### 7. Conclusion

Petitioner has shown Respondent was served with a valid subpoena and failed to comply. However, because Respondent had an adequate excuse for failing to comply, the Court cannot hold Respondent in contempt for that failure and denies Petitioner's motion.

### B. Motion to Compel

Petitioner also moves the Court for an order compelling compliance with the subject subpoena.

All subpoenas are issued "from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). However, subpoenaed testimony at a deposition must occur at a place "within 100 miles of where the person resides, is employed, or regularly transacts business[.]" Fed. R. Civ. P. 45(c)(1)(A). A motion to compel the production of documents must be made in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). Moreover, the language regarding the quashing or modifying a subpoena requires such a

---

[11] This is true even if the written objections did not legally excuse Respondent's appearance or legally reserve Respondent's rights.

motion be brought before the "district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A), (B). Thus, the Rule contemplates that the enforcement and modification of a subpoena must issue from the district where compliance is required.

Here, Petitioner moves for compliance with the subpoena in San Diego, California. However, Respondent is a "Delaware corporation with its principal place of business in Massachusetts." (Resp's Opp'n at 5:7-10.) Since compliance with the subpoena would occur outside of this district, the Court lacks jurisdiction to compel compliance with or to modify the subpoena.

Accordingly, the Court denies Petitioner's motion to compel compliance with the subpoena.

## V. CONCLUSION

The Court will conclude by noting that both parties have violated Rule 1, requiring the parties to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Dilatory actions and missteps by both parties have resulted in a delay of five months, an untold amount of attorney's fees, and excess time expended by both the parties and the Court. All of which could have easily been avoided had the parties and their attorneys simply heeded the tenets of Rule 1 and abided by simple professional courtesies.

For the reasons stated above, the Court **DENIES** Petitioner's motion to hold Respondent in contempt and to compel compliance with a modification of the subpoena.

**IT IS SO ORDERED**.

Dated: May 17, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge

17
18-CV-291-BEN-WVG